## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| MATTHEW MCGINLEY, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 13 CV 1586 |
| | ) |
| LIVINGSTON COUNTY, et al. | )    Judge James E. Shadid |
| | )    Magistrate Judge Jonathan E. Hawley |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

---

### AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys,
ROMANUCCI & BLANDIN, LLC, and complaining of Defendants, LIVINGSTON COUNTY,
ILLINOIS, SHERIFF ALVIN G. LINDSEY, OFFICER SHAWNEE L. BRAUMAN, OFFICER
BRANDI VANCE, OFFICER JASON L. LAWRENCE, OFFICER MICHAEL L. ATKINSON,
SERGEANT SCOTT T. HARMON, SHERIFF MARTIN MEREDITH, JAIL
SUPERINTENDENT BILL COX, ASSISTANT JAIL SUPERINTENDENT STUART INMAN,
JAMES PULLIAM, R.N., KAREN BUTLER, M.D., and ADVANCED CORRECTIONAL
HEALTHCARE, INC., and states as follows:

### NATURE OF COMPLAINT

1. This is a civil action arising under 42 U.S.C.A. § 1983. Plaintiff alleges a violation of

   substantive due process under the Fourteenth Amendment to the United States

Constitution, in that he was denied medical care and treatment in deliberate indifference to a serious medical need. Plaintiff makes demand for jury trial.

<u>JURISDICTION</u>

2. Jurisdiction of this Court is invoked under <u>28 U.S.C.A. § 1331</u> and <u>28 U.S.C.A. § 1343</u>. Plaintiff further invokes the Court's supplementary jurisdiction under <u>28 U.S.C.A. § 1367</u>, for his pendent State claims.

<u>PARTIES</u>

3. Plaintiff, Matthew McGinley is a citizen of the United States, and a resident of Livingston County, State of Illinois. From November 29, 2012 through January 17, 2013, and at all times material, plaintiff was a pretrial detainee, in Livingston County Jail, located in Livingston County, Illinois.

4. Defendant, LIVINGSTON COUNTY, d/b/a LIVINGSTON COUNTY JAIL, is a unit of local government, organized under the laws of Illinois.

5. The Sheriff of Livingston County, Illinois, is charged with operating the Livingston County Jail.  ALVIN G. LINDSEY is the current Sheriff of Livingston County, Illinois.

6. From November 29, 2012 through January 17, 2013, and at all times material, the following defendants, OFFICER SHAWNEE L. BRAUMAN, OFFICER BRANDI VANCE, OFFICER JASON L. LAWRENCE, OFFICER MICHAEL L. ATKINSON, (referred to collectively as "Defendants 1"), were working as Correctional Officers at the defendant county Livingston County Jail. At all times material to this complaint, defendants were acting under color of state law, ordinances and or regulations. Defendants are being sued individually.

2

7. From November 29, 2012 through January 17, 2013, and at all times material, the following defendant, SERGEANT SCOTT T. HARMON and SHERIFF MARTIN MEREDITH (referred to collectively as "Defendants 2"), were working at the defendant county Livingston County Jail as a correctional officer in supervisory positions. At all times material to this complaint, defendants were acting under color of state law, ordinances and or regulations. Defendants, SERGEANT SCOTT T. HARMON and SHERIFF MARTIN MEREDITH, are being sued individually, and in their official supervisory capacities.

8. From November 29, 2012 through January 17, 2013, and at all times material, defendant, BILL COX, was the Superintendent for the Livingston County Jail. At all times material to this complaint, defendant was acting under color of state law, ordinances and or regulations. At all times material to this complaint, defendant, BILL COX, is being sued in his official capacity.

9. From November 29, 2012 through January 17, 2013, and at all times material, defendant, STUART INMAN, was the Assistant Superintendent for the Livingston County Jail. At all times material to this complaint, defendant was acting under color of state law, ordinances and or regulations. At all times material to this complaint, defendant, STUART INMAN, is being sued in his official capacity.

10. From November 29, 2012 through January 17, 2013, Defendant, Advanced Correctional Healthcare, Inc., was a corporation incorporated and existing under the laws of the State of Illinois with its principal place of business in the City of Peoria, County of Peoria, State of Illinois. Defendant Advanced Correctional Healthcare, Inc. delivered physician

3

and nursing services to inmates, including Plaintiff, at the defendant county jail, during the aforementioned period.

11. From November 29, 2012 through January 17, 2013, and at all times material, defendant, KAREN L. BUTLER M.D., was an agent, employee and/or servant for defendant, Livingston County d/b/a Livingston County Jail. At all times material to this complaint, defendant was acting under color of state law, ordinances and or regulations. At all times material to this complaint, defendant, KAREN BUTLER, M.D., is being sued in her official capacity.

12. From November 29, 2012 through January 17, 2013, and at all times material, defendant, KAREN L. BUTLER M.D., was an apparent agent for defendant, Livingston County d/b/a Livingston County Jail. At all times material to this complaint, defendant was acting under color of state law, ordinances and or regulations. At all times material to this complaint, defendant, KAREN BUTLER, M.D., is being sued in her official capacity.

13. From November 29, 2012 through January 17, 2013, and at all times material, defendant, JAMES PULLIAM, R.N., was an employee, agent and/or servant for defendant, Livingston County d/b/a Livingston County Jail. At all times material to this complaint, defendant was acting under color of state law, ordinances and or regulations. At all times material to this complaint, defendant, JAMES PULLIAM, R.N., is being sued individually, and in his official supervisory capacity.

14. From November 29, 2012 through January 17, 2013, and at all times material, defendant, JAMES PULLIAM, R.N., was an apparent agent for defendant, Livingston County d/b/a Livingston County Jail. At all times material to this complaint, defendant

was acting under color of state law, ordinances and or regulations. At all times material to this complaint, defendant, JAMES PULLIAM, R.N., is being sued individually, and in his official supervisory capacity.

FACTS

15. When plaintiff was 13-years-old, he was diagnosed with the genetic disease neurofibromatosis, which causes tumors to grow on the spinal cord and requires medication.

16. On November 29, 2012, Plaintiff was arrested for alleged theft by the Livingston County Sheriff Bradshaw and imprisoned at Livingston County Jail.

17. The intake officer at Livingston County Jail, Defendant Sergeant Scott Harmon, marked on Plaintiff's "Intake Acceptance Questionnaire Fitness to Confine" sheet, dated November 29, 2012, that Plaintiff had the "known medical problem" of neurofibromatosis.

18. On November 29, 2012, Defendant Officer Michael Atkinson, completed Plaintiff's medical screening report, which failed to mention both the Plaintiff's neurofibromatosis and the medication used to treat it.

19. On December 2, 2012, Gregory Rakestraw, D.O. prescribed to Plaintiff medications including Propanolol and Propylthiouracil, neither of which was used to treat Plaintiff's neurofibromatosis.

20. On December 17, 2012, defendant Officer Jason Lawrence observed Plaintiff limp down the stairs and hallway and failed to help Plaintiff up after he fell down.

21. Defendant Officer Lawrence failed to make a report of the incident described in paragraph 22.

22. During his imprisonment, defendant Officer Shawnee L. Brauman, failed to fill out a sick call request for Plaintiff, despite the fact that Plaintiff requested one.

23.  On December 19, 2012, Plaintiff made a sick call request to defendant, James Pulliam R.N., explaining that "my legs and feet have become so numb I have difficulty walking and have been falling when trying to do simple things."

24. Approximately three weeks after being imprisoned without any medication for his neurofibromatosis, Plaintiff was seen by defendant, James Pulliam, R.N.

25. Defendant James Pulliam R.N.'s treatment plan for Plaintiff was a "72 hour activity log" and Plaintiff was not prescribed any medication for his neurofibromatosis.

26. On December 26, 2012, Plaintiff made a second sick call request to defendant James Pulliam R.N. stating, "I still haven't seen the doctor and my legs are getting worse. It's to the point I cannot walk around without assistance."

27. On December 27, 2012, Defendant James Pulliam R.N. had Plaintiff moved from a second floor unit to a ground floor unit.

28. On January 3, 2013, Defendant James Pulliam R.N. and Defendant Karen Butler M.D. ordered blood tests, which are not used to diagnose, treat, or monitor Plaintiff's neurofibromatosis

29. On January 4, 2013, Plaintiff made a "grievance" stating he was "being denied my right to medical treatment for my condition neurofibromatosis. From the first week of December, staff saw my falling and using others for assistance. It wasn't until my mother made staff aware she's filing a lawsuit did the nurse give me a wheelchair…I have multiple tumors on my spine that have grown rapidly in the last month, I seriously require medical attention from a medical professional before the damage to spine is irreparable."

30. The grievance described above in paragraph 31 was received by the jail, but no officer signed it or answered it.

31. On January 5, 2013, Plaintiff was given ibuprofen, which was signed off by Defendant physician Karen Butler, M.D. and defendant officer Shawnee Brauman.

32. As of January 5, 2013, Defendants still failed to give Plaintiff medication for his neurofibromatosis or send him to a neurosurgeon to receive appropriate medical treatment.

33. On January 6, 2013, Plaintiff made a third sick call request to defendant Sergeant Scott Harmon, who reported that Plaintiff advised him that "an increase in numbness and loss of use of legs. Believes he has a tumor pressing on his spinal cord."

34. The January 6, 2013 sick call request went unanswered for five days.

35. On January 11, 2013, Plaintiff was seen for the first time by defendant physician Karen Butler, M.D., approximately six weeks after Plaintiff was imprisoned.

36. Plaintiff was informed by defendant Karen Butler M.D. that a wheelchair would be accessible to him, but was encouraged to "work on exercises," but still received no medication or treatment for his neurofibromatosis.

37. On January 11, 2013, defendant Karen Butler M.D. ordered an x-ray of Plaintiff's spine, which found no acute abnormalities.

38. On information and belief, an x-ray would not reveal the growth of any tumors on Plaintiff's spine.

39. On January 11, 2013, defendant Karen Butler, M.D. stated in Plaintiff's "Medical Progress Note," that she would refer Plaintiff to a neurologist.

40. On January 12, 2013, defendant Officer Brandi Vance received a grievance from Plaintiff stating that he did not understand why he was being deprived of his wheelchair seeing that his legs could no longer support his weight, his falls continued to occur and he required assistance to walk.

41. On January 14, 2013, defendant Officer Jason Lawrence answered the grievance submitted by Plaintiff on January 12, 2013 and gave Plaintiff a wheelchair.

42. On January 15, 2013, defendant Karen Butler, M.D., after consulting with Gregory Rakestraw, D.O., scheduled an appointment for Plaintiff with a neurologist, Dr. David, for February 26, 2013, an appointment scheduled for four months after Plaintiff initially entered the jail.

43. On or about January 17, 2013, Plaintiff was in so much pain and the tumors on his spine had become so enlarged that he was transported from the defendant jail to OSF Saint Francis Hospital, where he underwent T4-9 posterior fusion on January 19, 2013.

44. Plaintiff was hospitalized at OSF Saint Francis Medical Center from January 17, 2013 through February 14, 2013, where he was admitted into OSF Saint Francis Medical Center's acute inpatient rehabilitation and was discharged on February 14, 2013.

45. To date, Plaintiff is paralyzed from the waist down and may never be able to walk again, experiences permanent pain and suffering, and will need additional surgery as a result of his neurofibromatosis going untreated at the Defendant jail.

46. Plaintiff was independent in all activities of daily living and was ambulatory without assistance prior to his incarceration at defendant jail on November 29, 2012.

47. To date, plaintiff is paralyzed, may never be able to walk again, experiences permanent pain and suffering, and will need additional surgery.

<u>COUNT I</u>

FAILURE TO PROVIDE ADEQUATE MEDICAL ATTENTION AND TREATMENT IN VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS (DEFENDANTS OFFICER SHAWNEE L. BRAUMAN, OFFICER BRANDI VANCE, OFFICER JASON L. LAWRENCE, OFFICER MICHAEL L. ATKINSON and DEFENDANTS SERGEANT SCOTT T. HARMON and SHERIFF MARTIN MEREDITH)

1-47.   Plaintiff hereby adopts and re-alleges paragraphs 1 through 47 as paragraphs 1 through 47 of Count I as though fully set forth herein.

48.   Defendants failed to take Plaintiff to dispensary from November 29, 2012 through his discharge on January 17, 2013 to obtain medication for his neurofibromatosis.

49.   This failure occurred despite Defendants' knowledge of Plaintiff's complaints of pain, failure to walk independently, multiple falls, his initial intake, which provided information regarding his genetic disorder of neurofibromatosis, and plaintiff's appearance which should have made it obvious to defendants that plaintiff was in serious need of medical attention.

50.   The aforesaid conduct demonstrated deliberate indifference to plaintiff's serious need for medical care and treatment, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution.

51.   Defendants failed to take Plaintiff to see a medical professional until three weeks after Plaintiff's initial complaint of pain and request to see a nurse or physician despite plaintiff's complaints of pain, numbness, weakness, inability to walk, and plaintiff's appearance which should have made it obvious to defendants that plaintiff was in serious need of medical attention.

52. The aforesaid conduct demonstrated deliberate indifference to plaintiff's serious need for medical care and treatment, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution.

53. Defendants ignored Plaintiff's "sick call requests" and "grievances" multiple times and did nothing to obtain further medical attention for plaintiff despite plaintiff's complaints of pain, numbness, weakness, inability to walk, and plaintiff's appearance which should have made it obvious to defendants that plaintiff was in serious need of medical attention.

54. The aforesaid conduct demonstrated deliberate indifference to plaintiff's serious need for medical care and treatment, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution.

55. Defendants did nothing to obtain further medical attention for plaintiff after he was told by defendant nurse James Pulliam, R.N. that he would be observed for 72 hours and was given no medication for his neurofibromatosis, despite plaintiff's complaints of pain, numbness, weakness, inability to walk, and plaintiff's appearance which should have made it obvious to defendants that plaintiff was in serious need of medical attention.

56. This aforesaid conduct demonstrated deliberate indifference to plaintiff's serious need for medical care and treatment, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution.

57. Defendants did not take Plaintiff to a physician until approximately six weeks after he was incarcerated despite plaintiff's complaints of pain, numbness, weakness, inability to walk, and plaintiff's appearance which should have made it obvious to defendants that plaintiff was in serious need of medical attention.

58. This aforesaid conduct demonstrated deliberate indifference to plaintiff's serious need for medical care and treatment, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution.

59. Defendants refused to give Plaintiff a permanent wheelchair despite the fact that he could not walk, was consistently falling, made several requests to have one at all times, complained of numbness and weakness, and plaintiff's appearance which should have made it obvious to defendants that plaintiff was in serious need of medical attention.

60. This aforesaid conduct demonstrated deliberate indifference to plaintiff's serious need for medical care and treatment, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution.

61. As a direct and proximate result of defendants' conduct, Plaintiff sustained severe and permanent injuries.

62.  By reason of said injuries, Plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, and disfigurement and distress. Further, Plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against Defendants, OFFICER SHAWNEE L. BRAUMAN, OFFICER BRANDI VANCE, OFFICER JASON L. LAWRENCE, OFFICER MICHAEL L. ATKINSON, SERGEANT SCOTT T. HARMON, and SHERIFF MARTIN MEREDITH, in a fair and just amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

<u>COUNT II</u>
FAILURE TO PROVIDE ADEQUATE MEDICAL ATTENTION AND TREATMENT,
IN VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS (DEFENDANT JAIL
SUPERINTENDENT BILL COX)

1-47.   Plaintiff re-alleges Paragraphs 1 through 48 of this complaint, as paragraphs 1 through 48
of Count II as though fully set forth herein.

48.  Defendant, BILL COX, ("COX") as Jail Superintendent of the Livingston County Jail,
was responsible for establishing and implementing policies, practices and procedures
designed to assure that Plaintiff, as a pretrial detainee at Livingston County Jail, received
adequate medical attention and treatment.

49.  Defendant's policy, practice and procedure were not designed to assure that Plaintiff, as a
pretrial detainee at Livingston County Jail, received adequate medical attention and
treatment.

50. Defendant adopted a policy, practice, procedure which he knew, or reasonably should
have known, would be ineffective in delivering adequate medical attention and treatment
for serious needs.

51. The policy, practice and procedure of the defendant Livingston County Jail, as told to
plaintiff, required that a "sick call request" for medical care be given to an officer within
the jail, before the pretrial detainee would be allowed to see a nurse and/or doctor.

52. This practice does not allow for the need to see a nurse or doctor on an emergency basis.

53. This practice delays and denies an inmate from receiving medical attention, in that, the
time in which the inmate will be seen for medical attention is dependent on whenever the
requests are taken by officers, answered and submitted for medical review.

54. The policy, practice and procedure implemented by defendant, COX, and the other defendants did not assure that Plaintiff would receive adequate medical attention.

55. Rather, Plaintiff was never given medication for his neurofibromatosis while incarcerated, was forced to wait for approximately three weeks before being taken to see defendant nurse, PULLIAM, and approximately six weeks before seeing defendant doctor, BUTLER. By that time, Plaintiff's tumors on his spine had enlarged to the point that Plaintiff became paralyzed from the waist down.

56.  The policy, practice and procedure implemented by defendant, COX, and the other defendants caused a serious delay in providing Plaintiff adequate and appropriate medical attention and a denial of medical care and treatment, thereby endangering plaintiff's health and well-being.

57. The policy, practice and procedure implemented by defendant, COX, and the other defendants constituted a deliberate indifference to plaintiff's serious medical needs.

58. The policy, practice and procedure implemented by defendant, COX, and the other defendants did not assure that plaintiff would receive adequate and appropriate medical attention, in that after defendant doctor was unable to appropriately treat and care for plaintiff's neurofibromatosis, and Plaintiff, was not scheduled an appointment with a neurologist until February 26, 2013, and was made to wait again for another week, before being be rushed to OSF Saint Francis Medical Center for emergency T4-9 posterior fusion surgery.

59. The policy, practice and procedure implemented by defendant, COX, and the other defendants caused a serious delay in providing plaintiff with needed medical attention,

and effectively denied plaintiff that care and treatment when most needed, thereby endangering plaintiff's physical, mental, and emotional health and well-being.

60. Defendant, COX, was acting under color of law in implementing the above-described policy, practice, and procedure, concerning the provision of medical care and treatment to plaintiff, for the LIVINGSTON COUNTY JAIL.

61. Defendant COX's above-described conduct violated plaintiff's substantive right to due process under the Fourteenth Amendment to the United States Constitution, in that it denied plaintiff adequate medical care and treatment.

62. As a direct and proximate result of defendants' conduct, Plaintiff sustained severe and permanent injuries.

63.  By reason of said injuries, Plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, disfigurement, and distress. Further, Plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against Defendant, BILL COX, in a fair and just amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

<u>COUNT III</u>
FAILURE TO PROVIDE ADEQUATE MEDICAL ATTENTION AND TREATMENT,
IN VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS (DEFENDANT
ASSISTANT JAIL SUPERINTENDENT STUART INMAN)

1-47.   Plaintiff re-alleges Paragraphs 1 through 47 of this complaint, paragraphs 1 through 47 of

Count III as though fully set forth herein.

48.   Defendant, STUART INMAN, ("INMAN" hereinafter) as Assistant Jail Superintendent

of the Livingston County Jail, was responsible for establishing and implementing

policies, practices and procedures designed to assure that plaintiff, as a pretrial detainee

at Livingston County Jail, received adequate medical attention and treatment.

49.   Defendant's policy, practice and procedure were not designed to assure that plaintiff, as a

pretrial detainee at Livingston County Jail, received adequate medical attention and

treatment. Defendant adopted a policy, practice, procedure which he knew, or reasonably

should have known, would be ineffective in delivering adequate medical attention and

treatment for serious needs.

50. The policy, practice and procedure of the defendant Livingston County Jail, as told to

plaintiff, required that a "sick call request" for medical care be given to an officer within

the jail, before the pretrial detainee would be allowed to see a nurse and/or doctor.

51. This practice does not allow for the need to see a nurse or doctor on an emergency basis.

This practice delays and denies an inmate from receiving medical attention, in that, the

time in which the inmate will be seen for medical attention is dependent on whenever the

requests are taken by officers, answered and submitted for medical review.

52. The policy, practice and procedure implemented by defendant, INMAN, and the other

defendants did not assure that plaintiff would receive adequate medical attention. Rather,

15

plaintiff was never given medication for his neurofibromatosis while incarcerated, was forced to wait in excruciating pain for approximately three weeks before being taken to see defendant nurse, PULLIAM, and approximately six weeks before seeing defendant doctor, BUTLER. By that time, plaintiff's tumors on his spine had enlarged to the point that Plaintiff became permanently paralyzed from the waist down.

53. The policy, practice and procedure implemented by defendant, INMAN, and the other defendants caused a serious delay in providing plaintiff adequate and appropriate medical attention and a denial of medical care and treatment, thereby endangering plaintiff's health and well-being.

54. The policy, practice and procedure implemented by defendant, INMAN, and the other defendants constituted a deliberate indifference to plaintiff's serious medical needs.

55. The policy, practice and procedure implemented by defendant, INMAN, and the other defendants did not assure that plaintiff would receive adequate and appropriate medical attention, in that after defendant doctor was unable to appropriately treat and care for plaintiff's neurofibromatosis, and plaintiff, was not scheduled an appointment with a neurologist until February 26, 2013, was made to wait again for another week before being be rushed to OSF Saint Francis Medical Center for emergency T4-9 posterior fusion surgery.

56.  The policy, practice and procedure implemented by defendant, INMAN, and the other defendants caused a serious delay in providing plaintiff with needed medical attention, and effectively denied plaintiff that care and treatment when most needed, thereby endangering plaintiff's physical, mental, and emotional health and well-being.

57. Defendant, INMAN, was acting under color of state law in implementing the above-described policy, practice, and procedure, concerning the provision of medical care and treatment to plaintiff, for the LIVINGSTON COUNTY JAIL.

58. Defendant INMAN 's above-described conduct violated plaintiff's substantive right to due process under the Fourteenth Amendment to the United States Constitution, in that it denied plaintiff adequate medical care and treatment.

59. As a direct and proximate result of defendants' conduct, Plaintiff sustained severe and permanent injuries.

60. By reason of said injuries, Plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, disfigurement, and distress. Further, Plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against Defendant, STUART INMAN, in a fair and just amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

COUNT IV
FAILURE TO PROVIDE ADEQUATE MEDICAL ATTENTION AND TREATMENT,
IN VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS (JAMES PULLIAM R.N.)

1-47. Plaintiff realleges Paragraphs 1 through 47 of this complaint, paragraphs 1 through 47 of Count IV as though fully set forth herein.

48. Defendant, JAMES PULLIAM, R.N., (hereinafter "PULLIAM") an employee, agent and/or servant for Livingston County Jail, was working as a nurse in a supervisory position in Livingston County Jail from November 29, 2012 through January 17, 2013,

when plaintiff was brought to him complaining of not being treated for his neurofibromatosis. Plaintiff could not walk, was consistently falling and was diagnosed with neurofibromatosis.

49. Defendant, PULLIAM, was an apparent agent of and for Livingston County, Illinois, working as a nurse in a supervisory position in Livingston County Jail from November 29, 2012 through January 17, 2013.

50. Defendant never gave Plaintiff medication for his neurofibromatosis. Instead PULLIAM's treatment plan, as of December 18, 2012, consisted of a "72-hour activity log," of supervising Plaintiff in jail.

51. After Plaintiff made a second "sick call request" on December 26, 2012, complaining of his legs getting worse (more numb), defendant PULLIAM moved plaintiff from a second floor unit to a ground floor unit.

52. Defendant, PULLIAM, did not contact or try to contact a doctor for plaintiff, after making observations, and becoming aware of plaintiff's pain. Defendant took no steps to assure that plaintiff would receive medical care at LIVINGSTON COUNTY JAIL, or at an outside medical facility.

53. Defendant, PULLIAM's, conduct demonstrated a deliberate indifference to plaintiff's serious medical needs, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution, in that it denied plaintiff adequate medical care and treatment.

54. As a direct and proximate result of defendants' conduct, Plaintiff sustained severe and permanent injuries.

55.  By reason of said injuries, Plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, disfigurement, and distress. Further, Plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against Defendant, JAMES PULLIAM, R.N., in a fair and just amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

<u>COUNT V</u>
FAILURE TO PROVIDE ADEQUATE MEDICAL ATTENTION AND TREATMENT, IN VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS (DEFENDANT ALVIN G. LINDSEY, IN HIS OFFICIAL CAPACITY AS SHERIFF OF LIVINGSTON COUNTY, ILLINOIS)

1-47.  Plaintiff re-alleges Paragraphs 1 through 47 of this complaint, paragraphs 1 through 47 of Count VII as though fully set forth herein.

48. The Sheriff of Livingston County, Illinois is responsible for establishing and implementing policies, practices and procedures designed to assure that Plaintiff, as a pretrial detainee at Livingston County Jail, received adequate medical attention and treatment.

49.  Defendant, ALVIN G. LINDSEY, IN HIS OFFICIAL CAPACITY AS SHERIFF OF LIVINGSTON COUNTY, ILLINOIS ("THE SHERIFF OF LIVINGSTON COUNTY") as current Sheriff of Livingston County, is responsible for the establishment of and implementation of policies, practices and procedures designed to assure that plaintiff, as a pretrial detainee at Livingston County Jail, received adequate medical attention and treatment.

19

50.  Defendant's policy, practice and procedure were not designed to assure that plaintiff, as a pretrial detainee at Livingston County Jail, received adequate medical attention and treatment. Defendant adopted a policy, practice, procedure which he knew, or reasonably should have known, would be ineffective in delivering adequate medical attention and treatment for serious needs.

51. The policy, practice and procedure of the defendant Livingston County Jail, as told to plaintiff, required that a "sick call request" for medical care be given to an officer within the jail, before the pretrial detainee would be allowed to see a nurse and/or doctor.

52. This practice does not allow for the need to see a nurse or doctor on an emergency basis. This practice delays and denies an inmate from receiving medical attention, in that, the time in which the inmate will be seen for medical attention is dependent on whenever the requests are taken by officers, answered and submitted for medical review.

53. The policy, practice and procedure implemented by defendant, THE SHERIFF OF LIVINGSTON COUNTY, and the other defendants did not assure that plaintiff would receive adequate medical attention. Rather, plaintiff was never given medication for his neurofibromatosis while incarcerated, was forced to wait in excruciating pain for approximately three weeks before being taken to see defendant nurse, PULLIAM, and approximately six weeks before seeing defendant doctor, BUTLER. By that time, plaintiff's tumors on his spine had enlarged to the point that Plaintiff became permanently paralyzed from the waist down.

54. The policy, practice and procedure implemented by defendant, THE SHERIFF OF LIVINGSTON COUNTY, and the other defendants caused a serious delay in providing

plaintiff adequate and appropriate medical attention and a denial of medical care and treatment, thereby endangering plaintiff's health and well-being.

55. The policy, practice and procedure implemented by defendant, THE SHERIFF OF LIVINGSTON COUNTY, and the other defendants constituted a deliberate indifference to plaintiff's serious medical needs.

56. The policy, practice and procedure implemented by defendant, THE SHERIFF OF LIVINGSTON COUNTY, and the other defendants did not assure that plaintiff would receive adequate and appropriate medical attention, in that after defendant doctor was unable to appropriately treat and care for plaintiff's neurofibromatosis, and plaintiff, was not scheduled an appointment with a neurologist until February 26, 2013, was made to wait again for another week in excruciating pain to his back, before being be rushed to OSF Saint Francis Medical Center for emergency T4-9 posterior fusion surgery.

57. The policy, practice and procedure implemented by defendant, THE SHERIFF OF LIVINGSTON COUNTY, and the other defendants caused a serious delay in providing plaintiff with needed medical attention, and effectively denied plaintiff that care and treatment when most needed, thereby endangering plaintiff's physical, mental, and emotional health and well-being.

58. Defendant, THE SHERIFF OF LIVINGSTON COUNTY, was acting under color of law in implementing the above-described policy, practice, and procedure, concerning the provision of medical care and treatment to plaintiff, for the LIVINGSTON COUNTY JAIL.

59. Defendant THE SHERIFF OF LIVINGSTON COUNTY 's above-described conduct violated plaintiff's substantive right to due process under the Fourteenth Amendment to

the United States Constitution, in that it denied plaintiff adequate medical care and treatment.

60. As a direct and proximate result of defendants' conduct, Plaintiff sustained severe and permanent injuries.

61.  By reason of said injuries, Plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, disfigurement, and distress. Further, Plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against Defendant, THE SHERIFF OF LIVINGSTON COUNTY, in a fair and just amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

<u>COUNT VI</u>
STATE CLAIM FOR MEDICAL MALPRACTICE AGAINST LIVINGSTON COUNTY, D/B/A [LIVINGSTON COUNTY JAIL]

1-47.  Plaintiff hereby adopts and re-alleges paragraphs 1 through 47 as paragraphs 1 through 47 of Count VIII as though fully set forth herein.

48. Defendant LIVINGSTON COUNTY, d/b/a LIVINGSTON COUNTY JAIL, is a unit of local government of Illinois. Under the jurisdiction of the Livingston County Board of Commissioners, defendant LIVINGSTON COUNTY maintains and operates a medical facility for the care and treatment of inmates at the defendant LIVINGSTON COUNTY JAIL, in Pontiac, Illinois, and as such employs or contracts with medical professionals, including general physicians, in the operation of the medical facility.

49. From November 29, 2012 through January 17, 2013, plaintiff, an inmate at LIVINGSTON COUNTY JAIL, was provided medical treatment inside this facility.

50. From November 29, 2012 through January 17, 2013, it was the duty of the Defendant, LIVINGSTON COUNTY, ILLINOIS, to render the level of care, skill, training, and expertise consistent with accepted medical practices and standards for well-qualified and reasonably careful physicians, having the same or similar training, skill, knowledge, expertise, equipment, and facilities, under the same or similar circumstances.

51. In violation of this duty owed plaintiff, defendant LIVINGSTON COUNTY was guilty of one or more of the following negligent acts, or omissions, directly and proximately causing injury and loss to plaintiff:

   a. Failed to provide an adequate number of physicians to meet the care needs of inmates, including Plaintiff;

   b. Failed to have consultants available to meet specialized case needs such as Plaintiff's neurofibromatosis;

   c. Failed to provide an adequate number of skilled and qualified physicians to meet care needs of inmates/detainees, including Plaintiff;

   d. Failed to provide qualified personnel to supervise the care provided to plaintiff.

   e. Failed to provide qualified personnel to review plaintiff's medical care and to follow the progress of medical care provided to plaintiff.

   f. Failed to transfer plaintiff to another medical facility for treatment after it first knew or should have known that plaintiff's neurofibromatosis was not being treated and could not be treated at the LIVINGSTON COUNTY JAIL;

   g. Failed to prescribe medicine which treated Plaintiff's neurofibromatosis;

    h.   Failed to supervise the prescribing of medications, specifically medicine needed to treat Plaintiff's neurofibromatosis;

    i.   Failed to provide timely medical care to Plaintiff;

    j.   Failed to refer Plaintiff to a neurosurgeon in a timely manner;

    k.   Was otherwise careless and negligent.

52. As a direct and proximate result of defendants' negligence and lack of professional care and competence, plaintiff sustained severe and permanent injuries.

53.  By reason of said injuries, plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, disfigurement, and distress. Further, plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against LIVINGSTON COUNTY in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

<u>COUNT VII</u>

STATE CLAIM FOR MEDICAL MALPRACTICE AGAINST KAREN BUTLER, M.D.

1-47.  Plaintiff hereby adopts and re-alleges paragraphs 1 through 47 as paragraphs 1 through 47 of Count VII as though fully set forth herein.

48. At all times mentioned, defendant, KAREN BUTLER M.D., was a physician licensed to practice in Illinois and was practicing her profession at Livingston County Jail. Defendant at all times mentioned held herself out as a competent and skillful physician.

49. Plaintiff at all times mentioned was a pretrial detainee in LIVINGSTON COUNTY JAIL. From November 29, 2012 through January 17, 2013, plaintiff was brought to defendant

BUTLER complaining of being untreated for his neurofibromatosis, including increased numbness in his legs and loss of use of his legs.

50. Defendant undertook to treat plaintiff at LIVINGSTON COUNTY JAIL.

51. From November 29, 2012 through January 17, 2013, it was the duty of the Defendant, KAREN BUTLER, M.D., to render the level of care, skill, training, and expertise consistent with accepted medical practices and standards for well-qualified and reasonably careful physicians, having the same or similar training, skill, knowledge, expertise, equipment, and facilities, under the same or similar circumstances.

52. Disregarding that duty, defendant BUTLER performed medical services on plaintiff negligently, and without due professional care and competence, in one or more of the following ways:

    a.   Failed to examine plaintiff's spinal tumors carefully and thoroughly, to determine whether a neurologist should be consulted;

    b.   Failed to timely schedule Plaintiff for an appointment with a neurologist;

    c.   Failed to recommend and/or schedule an MRI and/or CT scan in a timely fashion;

    d.   Failed to timely treat plaintiff's neurofibromatosis;

    e.   Failed to prescribe medication for Plaintiff's neurofibromatosis;

    f.   Failed to properly investigate and treat Plaintiff's complaints of pain, numbness, and loss of lower extremity sensation and feeling;

    g.   Carelessly and negligently failed to prevent or reduce the growth of tumors on Plaintiff's spinal cord;

      h.   Carelessly and negligently failed, after Plaintiff continued to fall and his condition worsened, to refer plaintiff for medical treatment, specifically a neurologist, either through LIVINGSTON COUNTY JAIL or an outside medical facility;

      i.   Was otherwise careless and negligent.

53. As a direct and proximate result of defendant's aforesaid acts and/or omissions, plaintiff sustained severe and permanent injuries.

54.  By reason of said injuries, plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, disfigurement, and distress. Further, plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against KAREN BUTLER, M.D. in a sum in excess of  SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

COUNT VIII<br>
STATE CLAIM FOR MEDICAL MALPRACTICE (ADVANCED CORRECTIONAL<br>
HEALTHCARE SERVICES, INC.)

1-47.   Plaintiff hereby adopts and re-alleges paragraphs 1 through 47 as paragraphs 1 through 47 of Count VIII as though fully set forth herein.

48. Defendant ADVANCED CORRECTIONAL HEALTHCARE SERVICES, INC. ("ADVANCED CORRECTIONAL" hereinafter) is a corporation incorporated in the State of Illinois, and its principal place of business is in Peoria, Peoria County, Illinois.

49. ADVANCED CORRECTIONAL is contracted by LIVINGSTON COUNTY  to maintain and operate a medical facility for the care and treatment of inmates at the defendant LIVINGSTON COUNTY JAIL, in Pontiac, Illinois, and as such employs or contracts

with medical professionals, including general physicians, in the operation of the medical facility.

50. From November 29, 2012 through January 17, 2013, plaintiff, an inmate at LIVINGSTON COUNTY JAIL, was provided medical treatment inside this facility by ADVANCED CORRECTIONAL.

51. From November 29, 2012 through January 17, 2013, it was the duty of the Defendant, ADVANCED CORRECTIONAL, to render the level of care, skill, training, and expertise consistent with accepted medical practices and standards for well-qualified and reasonably careful physicians, having the same or similar training, skill, knowledge, expertise, equipment, and facilities, under the same or similar circumstances.

52. Notwithstanding said duty, defendant ADVANCED CORRECTIONAL was guilty of one or more of the following negligent acts, or omissions, directly and proximately causing injury and loss to plaintiff:

   a.  Failed to provide an adequate number of physicians to meet the care needs of inmates, including Plaintiff;

   b.  Failed to have consultants available to meet specialized case needs such as Plaintiff's neurofibromatosis;

   c.  Failed to provide an adequate number of skilled and qualified physicians to meet care needs of inmates/detainees, including Plaintiff;

   d.  Failed to provide qualified personnel to supervise the care provided to plaintiff.

   e.  Failed to provide qualified personnel to review plaintiff's medical care and to follow the progress of medical care provided to plaintiff.

    f.   Failed to transfer plaintiff to another medical facility for treatment after it first knew or should have known that plaintiff's neurofibromatosis was not being treated and could not be treated at the LIVINGSTON COUNTY JAIL;

    g.   Failed to prescribe medicine which treated Plaintiff's neurofibromatosis;

    h.   Failed to supervise the prescribing of medications, specifically medicine needed to treat Plaintiff's neurofibromatosis;

    i.   Failed to provide timely medical care to Plaintiff;

    j.   Failed to refer Plaintiff to a neurosurgeon in a timely manner;

    k.   Was otherwise careless and negligent.

53. As a direct and proximate result of defendants' aforesaid acts and/or omissions, plaintiff sustained severe and permanent injuries.

54.  By reason of said injuries, plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, disfigurement, and distress. Further, plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against ADVANCED CORRECTIONAL HEALTHCARE, INC. in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

Respectfully Submitted,
ROMANUCCI & BLANDIN, LLC

/s Michael E. Holden
Attorney for Plaintiff

Stephan D. Blandin
Michael Holden
**ROMANUCCI & BLANDIN, LLC**
321 North Clark Street
Suite 900
Chicago, Illinois 60654
(312) 458-1000
(312) 458-1004 *facsimile*
Cook County Firm No: 35875