**E-FILED**
Tuesday, 25 November, 2014  03:31:45 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| MATTHEW MCGINLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 CV 1586 |
| | ) | |
| SHERIFF ALVIN G. LINDSEY, LIVINGSTON | ) | Judge James E. Shadid |
| COUNTY ILLINOIS, OFFICER SHAWNEE L. | ) | |
| BRAUMAN, OFFICER BRANDI VANCE, | ) | |
| OFFICER JASON L. LAWRENCE, OFFICER | ) | |
| MICHAEL L. ATKINSON, SERGEANT SCOTT | ) | |
| T. HARMON, JAMES PULLIAM, R.N. KAREN | ) | |
| BUTLER, M.D., and ADVANCED | ) | |
| CORRECTIONAL HEALTHCARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

### SECOND AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys,

ROMANUCCI & BLANDIN, LLC, and complaining of Defendants, SHERIFF ALVIN G.

LINDSEY, LIVINGSTON COUNTY ILLINOIS, OFFICER SHAWNEE L. BRAUMAN,

OFFICER BRANDI VANCE, OFFICER JASON L. LAWRENCE, OFFICER MICHAEL L.

ATKINSON, SERGEANT SCOTT T. HARMON, JAMES PULLIAM, R.N., KAREN

BUTLER, M.D., and ADVANCED CORRECTIONAL HEALTHCARE, INC., and states as

follows:

### NATURE OF COMPLAINT

1.      This is a civil action arising under 42 U.S.C.A. § 1983. Plaintiff alleges a

violation of substantive due process under the Fourteenth Amendment to the United States

Constitution, in that he was denied medical care and treatment in deliberate indifference to a serious medical need. Plaintiff makes demand for jury trial.

## JURISDICTION

2.      Jurisdiction of this Court is invoked under 28 U.S.C.A. § 1331 and 28 U.S.C.A. § 1343. Plaintiff further invokes the Court's supplementary jurisdiction under 28 U.S.C.A. § 1367, for his pendent State claims.

## PARTIES

3.      Plaintiff, Matthew McGinley is a citizen of the United States, and a resident of Livingston County, Illinois. From November 29, 2012 through January 17, 2013, and at all times material, plaintiff was a pretrial detainee, in Livingston County Jail, located in Livingston County, Illinois.

4.      Defendant, ALVIN G. LINDSEY, is the current Sheriff of Livingston County, Illinois. The Sheriff of Livingston County, Illinois, is charged with operating the Livingston County Jail.

5.      Defendant, LIVINGSTON COUNTY, is a unit of local government, organized under the laws of Illinois.

6.      Defendant, LIVINGSTON COUNTY, is named as an indispensable party due to its obligation to indemnify Defendant, ALVIN G. LINDSEY, pursuant to 55 ILCS 5/5-1002 and *Carver v. Sheriff of LaSalle County*, 203 Ill.2d 497 (2003).

7.      From November 29, 2012 through January 17, 2013, and at all times material, Defendants, OFFICER SHAWNEE L. BRAUMAN, OFFICER BRANDI VANCE, OFFICER JASON L. LAWRENCE, OFFICER MICHAEL L. ATKINSON, (referred to collectively as "Defendants 1"), were working as Correctional Officers at the Livingston County Jail. At all

2

times material to this complaint, defendants were acting under color of state law, ordinances and or regulations.

8.      From November 29, 2012 through January 17, 2013, and at all times material, Defendant, SERGEANT SCOTT T. HARMON (hereinafter referred to as "HARMON"), was working at Livingston County Jail as a correctional officer in a supervisory position. At all times material to this complaint, Defendant, HARMON, was acting under color of state law, ordinances and or regulations.

9.      From November 29, 2012 through January 17, 2013, Defendant, ADVANCED CORRECTIONAL HEALTHCARE, INC. (hereinafter "ACH"), was a corporation incorporated and existing under the laws of the State of Illinois with its principal place of business in the City of Peoria, County of Peoria, State of Illinois. Defendant, ACH, provided physician and nursing services to inmates, including Plaintiff, at Livingston County Jail, during the aforementioned period.

10.     From November 29, 2012 through January 17, 2013, and at all times material, Defendant, KAREN L. BUTLER M.D. (hereinafter "BUTLER, M.D."), was an actual agent, employee and/or servant for Defendant, ACH.

11.     From November 29, 2012 through January 17, 2013, and at all times material, Defendant, BUTLER M.D., was an apparent agent for Defendant, ACH.

12.     From November 29, 2012 through January 17, 2013, and at all times material, Defendant, JAMES PULLIAM, R.N. (hereinafter "PULLIAM, R.N."), was an actual employee, agent and/or servant for Defendant, ACH.

13.     From November 29, 2012 through January 17, 2013, and at all times material, Defendant, PULLIAM, R.N., was an apparent agent for Defendant, ACH.

14.     From November 29, 2012 through January 17, 2013, Plaintiff, MCGINLEY, relied upon Defendant, ACH, to provide medical personnel, including Defendants, BUTLER, M.D. and PULLIAM, R.N., in treating his medical conditions and complaints.

FACTS

15.     When plaintiff was 13-years-old, he was diagnosed with the genetic disease neurofibromatosis, which causes tumors to grow on the spinal cord and requires medication.

16.     On November 29, 2012, Plaintiff was arrested for alleged theft by the Livingston County Sheriff Bradshaw and detained at Livingston County Jail.

17.     The intake officer at Livingston County Jail, Defendant Sergeant Scott Harmon, marked on Plaintiff's "Intake Acceptance Questionnaire Fitness to Confine" sheet, dated November 29, 2012, that Plaintiff had the "known medical problem" of neurofibromatosis.

18.     On November 29, 2012, Defendant Officer Michael Atkinson, completed Plaintiff's medical screening report, which failed to mention both the Plaintiff's neurofibromatosis and the medication used to treat it.

19.     On December 2, 2012, Gregory Rakestraw, D.O. prescribed to Plaintiff medications including Propanolol and Propylthiouracil, neither of which was used to treat Plaintiff's neurofibromatosis.

20.     On December 17, 2012, defendant Officer Jason Lawrence observed Plaintiff limp down the stairs and hallway and failed to help Plaintiff up after he fell down.

21.     Defendant Officer Lawrence failed to make a report of the incident described in paragraph 20.

22.     During his imprisonment, defendant Officer Shawnee L. Brauman, failed to fill out a sick call request for Plaintiff, despite the fact that Plaintiff requested one.

23.    On December 19, 2012, Plaintiff made a sick call request to defendant, James Pulliam R.N., explaining that "my legs and feet have become so numb I have difficulty walking and have been falling when trying to do simple things."

24.    Approximately three weeks after being imprisoned without any medication for his neurofibromatosis, Plaintiff was seen by defendant, James Pulliam, R.N.

25.    Defendant James Pulliam R.N.'s treatment plan for Plaintiff was a "72 hour activity log" and Plaintiff was not prescribed any medication for his neurofibromatosis.

26.    On December 26, 2012, Plaintiff made a second sick call request to defendant James Pulliam R.N. stating, "I still haven't seen the doctor and my legs are getting worse. It's to the point I cannot walk around without assistance."

27.    On December 27, 2012, Defendant James Pulliam R.N. had Plaintiff moved from a second floor unit to a ground floor unit.

28.    On January 3, 2013, Defendant James Pulliam R.N. and Defendant Karen Butler M.D. ordered blood tests, which are not used to diagnose, treat, or monitor Plaintiff's neurofibromatosis

29.    On January 4, 2013, Plaintiff made a "grievance" stating he was "being denied my right to medical treatment for my condition neurofibromatosis. From the first week of December, staff saw my falling and using others for assistance. It wasn't until my mother made staff aware she's filing a lawsuit did the nurse give me a wheelchair…I have multiple tumors on my spine that have grown rapidly in the last month, I seriously require medical attention from a medical professional before the damage to spine is irreparable."

30.    The grievance described above in paragraph 29 was received by the jail, but no officer signed it or answered it.

31.     On January 5, 2013, Plaintiff was given ibuprofen, which was signed off by Defendant physician Karen Butler, M.D. and defendant officer Shawnee Brauman.

32.     As of January 5, 2013, Defendants still failed to give Plaintiff medication for his neurofibromatosis or send him to a neurosurgeon to receive appropriate medical treatment.

33.     On January 6, 2013, Plaintiff made a third sick call request to defendant Sergeant Scott Harmon, who reported that Plaintiff advised him that "an increase in numbness and loss of use of legs. Believes he has a tumor pressing on his spinal cord."

34.     The January 6, 2013 sick call request went unanswered for five days.

35.     On January 11, 2013, Plaintiff was seen for the first time by defendant physician Karen Butler, M.D., approximately six weeks after Plaintiff was imprisoned.

36.     Plaintiff was informed by defendant Karen Butler M.D. that a wheelchair would be accessible to him, but was encouraged to "work on exercises," but still received no medication or treatment for his neurofibromatosis.

37.     On January 11, 2013, defendant Karen Butler M.D. ordered an x-ray of Plaintiff's spine, which found no acute abnormalities.

38.     On information and belief, an x-ray would not reveal the growth of any tumors on Plaintiff's spine.

39.     On January 11, 2013, defendant Karen Butler, M.D. stated in Plaintiff's "Medical Progress Note," that she would refer Plaintiff to a neurologist.

40.     On January 12, 2013, defendant Officer Brandi Vance received a grievance from Plaintiff stating that he did not understand why he was being deprived of his wheelchair seeing that his legs could no longer support his weight, his falls continued to occur and he required assistance to walk.

41.     On January 14, 2013, defendant Officer Jason Lawrence answered the grievance submitted by Plaintiff on January 12, 2013 and gave Plaintiff a wheelchair.

42.     On January 15, 2013, defendant Karen Butler, M.D., after consulting with Gregory Rakestraw, D.O., scheduled an appointment for Plaintiff with a neurologist, Dr. David, for February 26, 2013, an appointment scheduled for four months after Plaintiff initially entered the jail.

43.     On or about January 17, 2013, Plaintiff was in so much pain and the tumors on his spine had become so enlarged that he was transported from the defendant jail to OSF Saint Francis Hospital, where he underwent T4-9 posterior fusion on January 19, 2013.

44.     Plaintiff was hospitalized at OSF Saint Francis Medical Center from January 17, 2013 through February 14, 2013, where he was admitted into OSF Saint Francis Medical Center's acute inpatient rehabilitation and was discharged on February 14, 2013.

45.     To date, Plaintiff is paralyzed from the waist down and may never be able to walk again, experiences permanent pain and suffering, and will need additional surgery as a result of his neurofibromatosis going untreated at the Defendant jail.

46.     Plaintiff was independent in all activities of daily living and was ambulatory without assistance prior to his incarceration at defendant jail on November 29, 2012.

47.     To date, plaintiff is paralyzed, may never be able to walk again, experiences permanent pain and suffering, and will need additional surgery.

## COUNT I

### (*McGinley v. Sheriff Alvin G. Lindsey* – Section 1983 Claim: Failure to Provide Adequate Medical Attention and Treatment in Violation of Plaintiff's Due Process Rights)

1-47.    Plaintiff re-alleges Paragraphs 1 through 47 of this complaint as paragraphs 1 through 47 of Count I as though fully set forth herein.

48.    The Sheriff of Livingston County, Illinois is responsible for establishing and implementing policies, practices and procedures designed to assure that Plaintiff, as a pretrial detainee at Livingston County Jail, received adequate medical attention and treatment.

49.    Defendant, ALVIN G. LINDSEY, in his official capacity as Sheriff Of Livingston County, Illinois ("THE SHERIFF OF LIVINGSTON COUNTY") as current Sheriff of Livingston County, is responsible for the establishment of and implementation of policies, practices and procedures designed to assure that plaintiff, as a pretrial detainee at Livingston County Jail, received adequate medical attention and treatment.

50.    Defendant's policy, practice and procedure were not designed to assure that plaintiff, as a pretrial detainee at Livingston County Jail, received adequate medical attention and treatment. Defendant adopted a policy, practice, procedure which he knew, or reasonably should have known, would be ineffective in delivering adequate medical attention and treatment for serious needs.

51.    The policy, practice and procedure of the defendant Livingston County Jail, as told to plaintiff, required that a "sick call request" for medical care be given to an officer within the jail, before the pretrial detainee would be allowed to see a nurse and/or doctor.

52.    This practice does not allow for the need to see a nurse or doctor on an emergency basis. This practice delays and denies an inmate from receiving medical attention, in that, the

time in which the inmate will be seen for medical attention is dependent on whenever the requests are taken by officers, answered and submitted for medical review.

53.     The policy, practice and procedure implemented by defendant, THE SHERIFF OF LIVINGSTON COUNTY, and the other defendants did not assure that plaintiff would receive adequate medical attention. Rather, plaintiff was never given medication for his neurofibromatosis while incarcerated, was forced to wait in excruciating pain for approximately three weeks before being taken to see defendant nurse, PULLIAM, and approximately six weeks before seeing defendant doctor, BUTLER. By that time, plaintiff's tumors on his spine had enlarged to the point that Plaintiff became permanently paralyzed from the waist down.

54.     The policy, practice and procedure implemented by defendant, THE SHERIFF OF LIVINGSTON COUNTY, and the other defendants caused a serious delay in providing plaintiff adequate and appropriate medical attention and a denial of medical care and treatment, thereby endangering plaintiff's health and well-being.

55.     The policy, practice and procedure implemented by defendant, THE SHERIFF OF LIVINGSTON COUNTY, and the other defendants constituted a deliberate indifference to plaintiff's serious medical needs.

56.     The policy, practice and procedure implemented by defendant, THE SHERIFF OF LIVINGSTON COUNTY, and the other defendants did not assure that plaintiff would receive adequate and appropriate medical attention, in that after defendant doctor was unable to appropriately treat and care for plaintiff's neurofibromatosis, and plaintiff, was not scheduled an appointment with a neurologist until February 26, 2013, was made to wait again for another

week in excruciating pain to his back, before being be rushed to OSF Saint Francis Medical Center for emergency T4-9 posterior fusion surgery.

57.     The policy, practice and procedure implemented by defendant, THE SHERIFF OF LIVINGSTON COUNTY, and the other defendants caused a serious delay in providing plaintiff with needed medical attention, and effectively denied plaintiff that care and treatment when most needed, thereby endangering plaintiff's physical, mental, and emotional health and well-being.

58.     Defendant, THE SHERIFF OF LIVINGSTON COUNTY, was acting under color of law in implementing the above-described policy, practice, and procedure, concerning the provision of medical care and treatment to plaintiff, for the LIVINGSTON COUNTY JAIL.

59.     Defendant THE SHERIFF OF LIVINGSTON COUNTY 's above-described conduct violated plaintiff's substantive right to due process under the Fourteenth Amendment to the United States Constitution, in that it denied plaintiff adequate medical care and treatment.

60.     As a direct and proximate result of defendants' conduct, Plaintiff sustained severe and permanent injuries.

61.      By reason of said injuries, Plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, disfigurement, and distress. Further, Plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against Defendant, THE SHERIFF OF LIVINGSTON COUNTY, in a fair and just amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

## COUNT II
(*McGinley v. Livingston County, Illinois, as Indemnifier of Alvin G. Lindsey, Sheriff of Livingston County* – Section 1983 Claim: Failure to Provide Adequate Medical Attention and Treatment in Violation of Plaintiff's Due Process Rights)

1-47.    Plaintiff hereby adopts and re-alleges paragraphs 1 through 61 of Count I as paragraphs 1 through 47 of Count I as though fully set forth herein.

48.    Pursuant to 55 ILCS 5/5-1002 and *Carver v. Sheriff of LaSalle County*, 203 Ill.2d 497 (2003) and its progeny, Defendant, LIVINGSTON COUNTY ILLINOIS has a duty to indemnify Defendant, ALVIN G. LINDSEY as Sheriff of Livingston County for any judgment rendered against him in this matter.  As such, Defendant, LIVINGSTON COUNTY ILLINOIS is hereby named as an indispensable party.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against Defendant, LIVINGSTON COUNTY ILLINOIS, as indemnifier of Alvin G. Lindsey, Sheriff of Livingston County, in a fair and just amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

## COUNT III
(*McGinley v. Officer Shawnee L. Brauman, Officer Brandi Vance, Officer Jason L. Lawrence, Officer Michael L. Atkinson, and Sgt. Scott T. Harmon* – Section 1983 Claim: Failure to Provide Adequate Medical Attention and Treatment in Violation of Plaintiff's Due Process Rights)

1-48.    Plaintiff hereby adopts and re-alleges paragraphs 1 through 47, above, as paragraphs 1 through 47 of Count I as though fully set forth herein.

48.    Defendants failed to take Plaintiff to dispensary from November 29, 2012 through his discharge on January 17, 2013 to obtain medication for his neurofibromatosis.

49.    This failure occurred despite Defendants' knowledge of Plaintiff's complaints of pain, failure to walk independently, multiple falls, his initial intake, which provided information

11

regarding his genetic disorder of neurofibromatosis, and plaintiff's appearance which should have made it obvious to defendants that plaintiff was in serious need of medical attention.

50.    The aforesaid conduct demonstrated deliberate indifference to plaintiff's serious need for medical care and treatment, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution.

51.    Defendants failed to take Plaintiff to see a medical professional until three weeks after Plaintiff's initial complaint of pain and request to see a nurse or physician despite plaintiff's complaints of pain, numbness, weakness, inability to walk, and plaintiff's appearance which should have made it obvious to defendants that plaintiff was in serious need of medical attention.

52.    The aforesaid conduct demonstrated deliberate indifference to plaintiff's serious need for medical care and treatment, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution.

53.    Defendants ignored Plaintiff's "sick call requests" and "grievances" multiple times and did nothing to obtain further medical attention for plaintiff despite plaintiff's complaints of pain, numbness, weakness, inability to walk, and plaintiff's appearance which should have made it obvious to defendants that plaintiff was in serious need of medical attention.

54.    The aforesaid conduct demonstrated deliberate indifference to plaintiff's serious need for medical care and treatment, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution.

55.    Defendants did nothing to obtain further medical attention for plaintiff after he was told by defendant nurse James Pulliam, R.N. that he would be observed for 72 hours and

was given no medication for his neurofibromatosis, despite plaintiff's complaints of pain, numbness, weakness, inability to walk, and plaintiff's appearance which should have made it obvious to defendants that plaintiff was in serious need of medical attention.

56.     This aforesaid conduct demonstrated deliberate indifference to plaintiff's serious need for medical care and treatment, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution.

57.      Defendants did not take Plaintiff to a physician until approximately six weeks after he was incarcerated despite plaintiff's complaints of pain, numbness, weakness, inability to walk, and plaintiff's appearance which should have made it obvious to defendants that plaintiff was in serious need of medical attention.

58.     This aforesaid conduct demonstrated deliberate indifference to plaintiff's serious need for medical care and treatment, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution.

59.     Defendants refused to give Plaintiff a permanent wheelchair despite the fact that he could not walk, was consistently falling, made several requests to have one at all times, complained of numbness and weakness, and plaintiff's appearance which should have made it obvious to defendants that plaintiff was in serious need of medical attention.

60.     This aforesaid conduct demonstrated deliberate indifference to plaintiff's serious need for medical care and treatment, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution.

61.     As a direct and proximate result of defendants' conduct, Plaintiff sustained severe and permanent injuries.

62.     By reason of said injuries, Plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, and disfigurement and distress. Further, Plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against Defendants, OFFICER SHAWNEE L. BRAUMAN, OFFICER BRANDI VANCE, OFFICER JASON L. LAWRENCE, OFFICER MICHAEL L. ATKINSON, SERGEANT SCOTT T. HARMON, and SHERIFF MARTIN MEREDITH, in a fair and just amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

### COUNT IV
**(*McGinley v. James Pulliam, R.N.* – Section 1983 Claim: Failure to Provide Adequate Medical Attention and Treatment in Violation of Plaintiff's Due Process Rights)**

1-47.   Plaintiff realleges Paragraphs 1 through 47 of this complaint as paragraphs 1 through 47 of Count III as though fully set forth herein.

48.     Defendant, PULLIAM, was working as a nurse in the Livingston County Jail from November 29, 2012 through January 17, 2013, when plaintiff was brought to him complaining of not being treated for his neurofibromatosis. Plaintiff could not walk, was consistently falling and was diagnosed with neurofibromatosis.

49.     Defendant, PULLIAM, never gave Plaintiff medication for his neurofibromatosis. Instead PULLIAM's treatment plan, as of December 18, 2012, consisted of a "72-hour activity log," of supervising Plaintiff in jail.

50.     After Plaintiff made a second "sick call request" on December 26, 2012, complaining of his legs getting worse (more numb), defendant PULLIAM moved plaintiff from a second floor unit to a ground floor unit.

14

51.     Defendant, PULLIAM, did not contact or try to contact a doctor for plaintiff, after making observations, and becoming aware of plaintiff's pain. Defendant took no steps to assure that plaintiff would receive medical care at Livingston County Jail, or at an outside medical facility.

52.     Defendant, PULLIAM's, conduct demonstrated a deliberate indifference to plaintiff's serious medical needs, in violation of plaintiff's right to substantive due process protected under the Fourteenth Amendment to the United States Constitution, in that it denied plaintiff adequate medical care and treatment.

53.     Defendant, PULLIAM's was acting under color of state law, ordinances and or regulations.

54.     As a direct and proximate result of defendants' conduct, Plaintiff sustained severe and permanent injuries.

55.      By reason of said injuries, Plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, disfigurement, and distress. Further, Plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against Defendant, JAMES PULLIAM, R.N., in a fair and just amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

### COUNT V
### (*McGinley v. James Pulliam, R.N.* – State Claim for Medical Malpractice)

1-47.   Plaintiff hereby adopts and re-alleges paragraphs 1 through 47 as paragraphs 1 through 47 of Count VII as though fully set forth herein.

48.     At all times mentioned, defendant, JAMES PULLIAM, R.N., was a registered nurse licensed to practice in Illinois and was practicing his profession at Livingston County Jail. Defendant at all times mentioned held herself out as a competent and skillful nurse.

49.     Plaintiff at all times mentioned was a pretrial detainee in LIVINGSTON COUNTY JAIL. From November 29, 2012 through January 17, 2013, plaintiff was brought to defendant PULLIAM complaining of being untreated for his neurofibromatosis, including increased numbness in his legs and loss of use of his legs.

50.     Defendant undertook to treat plaintiff at LIVINGSTON COUNTY JAIL.

51.     From November 29, 2012 through January 17, 2013, it was the duty of the Defendant, PULLIAM, to render the level of care, skill, training, and expertise consistent with accepted medical practices and standards for well-qualified and reasonably careful nurses, having the same or similar training, skill, knowledge, expertise, equipment, and facilities, under the same or similar circumstances.

52.     Disregarding that duty, defendant PULLIAM performed medical services on plaintiff negligently, and without due professional care and competence, in one or more of the following ways:

    a.  Failed to properly examine plaintiff's complaints of pain, weakness, and numbness;

    b.  Failed to properly consider plaintiff's history of neurofibromatosis in considering his complaints of pain, weakness, and numbness in the legs;

    c.  Failed to timely schedule Plaintiff for an appointment with a physician;

    d.  Failed to properly investigate and treat Plaintiff's complaints of pain, numbness, and loss of lower extremity sensation and feeling;

    e.  Carelessly and negligently failed, after Plaintiff continued to fall and his condition worsened, to refer plaintiff for medical treatment, specifically a neurologist, either through LIVINGSTON COUNTY JAIL or an outside medical facility.

16

53.     As a direct and proximate result of defendant's aforesaid acts and/or omissions, plaintiff sustained severe and permanent injuries.

54.      By reason of said injuries, plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, disfigurement, and distress. Further, plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against JAMES PULLIAM, R.N. in a sum in excess of  SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

### COUNT VI
#### (*McGinley v. Karen Butler, M.D.* – State Claim for Medical Malpractice)

1-48.   Plaintiff hereby adopts and re-alleges paragraphs 1 through 47 as paragraphs 1 through 47 of Count VII as though fully set forth herein.

55.     At all times mentioned, defendant, KAREN BUTLER M.D., was a physician licensed to practice in Illinois and was practicing her profession at Livingston County Jail. Defendant at all times mentioned held herself out as a competent and skillful physician.

56.     Plaintiff at all times mentioned was a pretrial detainee in LIVINGSTON COUNTY JAIL. From November 29, 2012 through January 17, 2013, plaintiff was brought to defendant BUTLER complaining of being untreated for his neurofibromatosis, including increased numbness in his legs and loss of use of his legs.

57.     Defendant undertook to treat plaintiff at LIVINGSTON COUNTY JAIL.

58.     From November 29, 2012 through January 17, 2013, it was the duty of the Defendant, KAREN BUTLER, M.D., to render the level of care, skill, training, and expertise consistent with accepted medical practices and standards for well-qualified and reasonably

careful physicians, having the same or similar training, skill, knowledge, expertise, equipment, and facilities, under the same or similar circumstances.

59.     Disregarding that duty, defendant BUTLER performed medical services on plaintiff negligently, and without due professional care and competence, in one or more of the following ways:

a.  Failed to examine plaintiff's spinal tumors carefully and thoroughly, to determine whether a neurologist should be consulted;

b.  Failed to timely schedule Plaintiff for an appointment with a neurologist;

c.  Failed to recommend and/or schedule an MRI and/or CT scan in a timely fashion;

d.  Failed to timely treat plaintiff's neurofibromatosis;

e.  Failed to prescribe medication for Plaintiff's neurofibromatosis;

f.  Failed to properly investigate and treat Plaintiff's complaints of pain, numbness, and loss of lower extremity sensation and feeling;

g.  Carelessly and negligently failed to prevent or reduce the growth of tumors on Plaintiff's spinal cord; and/or

h.  Carelessly and negligently failed, after Plaintiff continued to fall and his condition worsened, to refer plaintiff for medical treatment, specifically a neurologist, either through LIVINGSTON COUNTY JAIL or an outside medical facility.

60.     As a direct and proximate result of defendant's aforesaid acts and/or omissions, plaintiff sustained severe and permanent injuries.

61.      By reason of said injuries, plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, disfigurement, and distress. Further, plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against KAREN BUTLER, M.D. in a sum in excess of  SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

<u>**COUNT VII**</u>
(*McGinley v. Advanced Correctional Healthcare, Inc.. –* **State Claim for Medical Malpractice**)

1-47.   Plaintiff hereby adopts and re-alleges paragraphs 1 through 47 as paragraphs 1 through 47 of Count VIII as though fully set forth herein.

48.   Defendant ADVANCED CORRECTIONAL HEALTHCARE, INC. ("ADVANCED CORRECTIONAL" hereinafter) is a corporation incorporated in the State of Illinois, and its principal place of business is in Peoria, Peoria County, Illinois.

49.   ADVANCED CORRECTIONAL is contracted by LIVINGSTON COUNTY  to maintain and operate a medical facility for the care and treatment of inmates at the defendant LIVINGSTON COUNTY JAIL, in Pontiac, Illinois, and as such employs or contracts with medical professionals, including general physicians, in the operation of the medical facility.

50.   From November 29, 2012 through January 17, 2013, plaintiff, an inmate at LIVINGSTON COUNTY JAIL, was provided medical treatment inside this facility by ADVANCED CORRECTIONAL through its agents and/or employees Karen Butler, M.D. and James Pulliam, R.N.

51.   In rendering care and treatment to plaintiff, Karen Butler, M.D. and James Pulliam, R.N.

52.   From November 29, 2012 through January 17, 2013, it was the duty of the Defendant, ADVANCED CORRECTIONAL, by and through its agents and/or employees, including Karen Butler, M.D. and James Pulliam, R.N., to render the level of care, skill, training, and expertise consistent with accepted medical practices and standards for well-qualified and reasonably careful physicians and/or nurses, having the same or similar training, skill, knowledge, expertise, equipment, and facilities, under the same or similar circumstances.

53.     Notwithstanding said duty, defendant ADVANCED CORRECTIONAL, by and through its agents and/or employees including Karen Butler, M.D. and James Pulliam, R.N., was guilty of one or more of the following negligent acts, or omissions, directly and proximately causing injury and loss to plaintiff:

    a.   Failed to examine plaintiff's spinal tumors carefully and thoroughly, to determine whether a neurologist should be consulted;

    b.   Failed to timely schedule Plaintiff for an appointment with a neurologist;

    c.   Failed to recommend and/or schedule an MRI and/or CT scan in a timely fashion;

    d.   Failed to timely treat plaintiff's neurofibromatosis;

    e.   Failed to prescribe medication for Plaintiff's neurofibromatosis;

    f.   Failed to properly investigate and treat Plaintiff's complaints of pain, numbness, and loss of lower extremity sensation and feeling;

    g.   Failed to prevent or reduce the growth of tumors on Plaintiff's spinal cord;

    h.   Failed, after Plaintiff continued to fall and his condition worsened, to refer plaintiff for medical treatment, specifically a neurologist, either through LIVINGSTON COUNTY JAIL or an outside medical facility;

    i.   Failed to properly examine plaintiff's complaints of pain, weakness, and numbness;

    j.   Failed to properly consider plaintiff's history of neurofibromatosis in considering his complaints of pain, weakness, and numbness in the legs;

    k.   Failed to timely schedule Plaintiff for an appointment with a physician;

    l.   Failed to properly investigate and treat Plaintiff's complaints of pain, numbness, and loss of lower extremity sensation and feeling;

    m.   Carelessly and negligently failed, after Plaintiff continued to fall and his condition worsened, to refer plaintiff for medical treatment, specifically a neurologist, either through LIVINGSTON COUNTY JAIL or an outside medical facility.

54.     As a direct and proximate result of defendants' aforesaid acts and/or omissions, plaintiff sustained severe and permanent injuries.

55.     By reason of said injuries, plaintiff suffered and continues to suffer extreme and unnecessary pain, suffering, disability, disfigurement, and distress. Further, plaintiff has lost various gains and earnings he would otherwise have acquired but for the injuries sustained.

WHEREFORE, the Plaintiff, MATTHEW MCGINLEY, by and through his attorneys Romanucci & Blandin, LLC, asks that judgment be entered against ADVANCED CORRECTIONAL HEALTHCARE, INC. in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus fees and costs.

Respectfully Submitted,
ROMANUCCI & BLANDIN, LLC

    PROPOSED AMENDMENT
Attorney for Plaintiff

Stephan D. Blandin
Michael Holden
**ROMANUCCI & BLANDIN, LLC**
321 North Clark Street
Suite 900
Chicago, Illinois 60654
(312) 458-1000
(312) 458-1004 *facsimile*
Cook County Firm No: 35875

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | | |
|---|---|---|---|
| MATTHEW MCGINLEY, | ) | | |
| | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 13 CV 1586 |
| | ) | | |
| LIVINGSTON COUNTY, a municipal corporation, ) | | | |
| Et al., | ) | | |
| Defendants. | ) | | |

**AMENDED AFFIDAVIT PURSUANT TO 735 ILCS 5/2-622**

    I, MICHAEL E. HOLDEN, as attorney for the Plaintiffs, and pursuant to Section 2-622 of the Illinois Code of Civil Procedure, state as follows:

1.    That I have consulted and reviewed the facts of the above-captioned case with a health professional who I reasonably believe: a) is knowledgeable in the relevant issues involved in this particular action, b) practices or has practiced within the last 5 years in the same area of health care or medicine that is at issue in this particular action; and c) is qualified by experience or demonstrated competency in the subject of this case.

2.    That the reviewing professional is licensed to practice medicine and has special qualifications in Clinical Neurophysiology and Vascular Neurology.

3.    That the reviewing professional has determined in written reports, after a review of the medical records, records from Livingston County jail, and other relevant material involved in this particular action that there is a reasonable and meritorious cause for filing of this action against Nurse James Pulliam and Dr. Karen Butler.  (See report attached hereto and incorporated herein as Exhibit "A").

4.    That, after reviewing the medical records, records from Livingston County Jail, and other relevant materials involved in this matter, the reviewing professional has concluded that a reasonable health professional, upon hearing Mr. McGinley's complaints, would have ordered the appropriate imaging studies of the spine to identify the spinal tumor and treat it. (See Ex. A).

5.    That I have concluded on the basis of the reviewing professional's review and consultation that there is a reasonable and meritorious cause for filing this

complaint, and that the reports comport with the requirements of 735 ILCS 5/2-622.

FURTHER AFFIANT SAYETH NAUGHT

_____/s Michael Holden___
Michael E. Holden

Michael E. Holden
ROMANUCCI & BLANDIN, LLC
321 N. Clark Street
Suite 900
Chicago, Illinois 60654
312.458.1000
Illinois ARDC # 6296752
mholden@rblaw.net



**E-FILED**
Wednesday, 26 February, 2014  11:06:02 AM
Clerk, U.S. District Court, ILCD

Physician's Report

I am a physician licensed to practice medicine in the state of Connecticut specializing in adult neurology.  I am board certified by the American Board of Psychology and Neurology in Adult Neurology as well as having special qualifications in Clinical Neurophysiology and Vascular Neurology.  I have been engaged in the practice of neurology for the past 26 years.  I have a teaching appointment at the University of Connecticut School of Medicine as an Assistant Clinical Professor of Neurology.  I have treated patients presenting with similar symptoms and signs as Mr. McGinley.

I have reviewed the following records relating to this matter:
- Records from Livingston County Jail;
- Records from St. Francis Medical Center involving the admission of January 17, 2013;
- Children's Memorial Hospital records dating back to 1999; and
- Records from St. James-John W. Albrecht Medical Center from 2013.

Based on my review, I can glean that Mr. McGinley was incarcerated at Livingston County Jail from November 29, 2012 through January 17, 2013.  The earliest record I have regarding his complaints of leg weakness dates to December 18, 2012 when he requested a wheelchair for a pre-trial hearing due to leg weakness.  On December 19, 2012, Mr. McGinley first specifically complained of numbness in his feet with difficulty walking, requesting medical attention.  He was seen on December 18, 2012 by Nurse James Pulliam whose only examination consisted of checking circulation in his lower extremities.  There is no record of a neurologic assessment.  Subsequent to that office visit, Mr. McGinley was put under surveillance with an hourly activity monitor.  There are entries from December 18, 2012 and December 21, 2012 which describe him as limping.  On December 26, 2012, the patient requested a medical visit because he felt his legs were getting worse.  In response to that request, Nurse Pulliam moved Mr. McGinley's cell to a first floor cell in order to avoid climbing stairs.  On January 4, 2013, Mr. McGinley made another written request for treatment.  On January 5, 2013 there is an order from Dr. Butler allowing Mr. McGinley to receive Ibuprofen.  On January 6, 2013 there is a sick call request by a correctional officer because of Mr. McGinley's complaint of increasing numbness and loss of use of his lower extremities.  That same correctional officer says Mr. McGinley "believes he has a tumor pressing on his spinal cord."  On January 11, 2013 Mr. McGinley was evaluated by Nurse Pulliam and Dr. Butler.  In Nurse Pulliam's note, he relates the details of his prior encounters with Mr. McGinley, He reports that he was told by a correctional officer that Mr. McGinley was seen running up and down stairs, "a little over a week prior to the 18th."  Nurse Pulliam relates that on January 3, 2013, he was called to Mr. McGinley's unit because he was sitting on the floor stating he couldn't get up because his lower extremities had gotten worse.  Nurse Pulliam further states that he called Dr. Butler on December 27, 2012 and January 3, 2013 to update her on Mr. McGinley's status at which time serum studies were ordered.  On the January 11 assessment, Nurse Pulliam reports that he found no neurologic deficits on Mr. McGinley.  He states that Mr. McGinley had no complaints of bladder or bowel difficulties on that date.  He was going to institute passive range of motion exercises and reevaluate Mr. McGinley in one week and if there were no improvements, he would be referred to Neurology.  On January 11, 2013, Mr. McGinley was also seen by Dr. Butler.  Dr. Butler relates the history that Mr. McGinley was witnessed to be running up and down stairs without any problem.  Dr. Butler noted no atrophy in the lower

extremities, normal rectal tone, normal reflexes in the upper and lower extremities, and "negative Babinski signs in both feet." Dr. Butler also remarks that Mr. McGinley was able to raise his legs to put stockings on and that Mr. McGinley was able to cross one leg over the other. Dr. Butler reports normal tone in the lower extremities. The toes moved to noxious stimuli. No spasm was noted in the lower extremities. Dr. Butler's conclusion was that the patient had a normal neurological examination and she suspected "malingering." It was after that assessment when Dr. Butler ordered serum studies and plain films of the thoracic and lumbar spines. These studies were read as showing no acute abnormalities and further imaging of the lumbar and thoracic spine with CT Scan or MRI scan was felt to be helpful.

On January 17, 2013, Mr. McGinley was admitted to St. Francis Medical Center with paraplegia. An admitting MRI scan of the thoracic spine demonstrated significant spinal cord compression at the T6-T7 level by a large epidural tumor. The tumor was resected on January 19, 2013 by Dr. Julian Lin with a tumor pathology being consistent with a plexiform schwannoma. Mr. McGinley was discharged on January 24, 2013 to a rehab setting with continued paraplegia.

The biggest concern I have in reviewing this case is the fact that the nursing/medical staff at Livingston County Jail knew about Mr. McGinley's diagnosis of neurofibromatosis dating back to age 13. There is documentation about neurofibromatosis being associated with spinal cord tumors with spinal cord compression in their jail record. In knowing the diagnosis of neurofibromatosis, the medical/nursing staff should have been acutely aware that Mr. McGinley's complaints of sensory and motor loss in the lower extremities could be consistent with a spinal cord tumor related to this disorder. This patient had complaints for almost one month prior to his eventual admission to St. Francis Hospital which were not adequately evaluated by the nursing and medical staff at Livingston County Jail. One can have spinal cord symptoms and have relatively preserved strength as in this case. If the appropriate imaging studies of the spine were performed in a timely fashion in mid to late December 2012, I have no doubt that the spinal cord tumor would have been identified and if treated at that time, Mr. McGinley would have had a much more favorable outcome.

It is my opinion that there is a meritorious basis for filing this cause of action against Nurse James Pulliam and Dr. Karen Butler.

Dated February 26, 2013

Signed,

[Physician's Named Redacted]